This action was instituted by Emily J. Stout, executrix of the estate of her deceased husband, against the Eastern Rock Island Plow Company and Marshall Smith, to obtain a new trial pursuant to that section of the Code which provides a method of procuring a new trial after the time for filing a motion therefor has expired. § 614 Burns 1926, § 589 Burns 1914. The complaint is verified by the oath of the plaintiff. The *Page 220 
defendant Eastern Rock Island Plow Company demurred to the complaint on the ground that the complaint does not state facts sufficient to constitute a cause of action. The following are the specific objections to the complaint, as stated in the memorandum:
"(1) There is no sufficient showing of the newly-discovered evidence; (2) the plaintiff's statement is not supported by the affidavit of any one other than herself; (3) the complaint does not show what any witness will testify upon another trial; the facts stated in the complaint relative to the execution of the note are not sufficient to constitute a defense to the action on the note; and (4) the complaint does not show any diligence to ascertain the facts relative to the execution of the note, prior to the trial of the cause in which judgment was rendered."
The demurrer was overruled. The Eastern Rock Island Plow Company filed answer of general denial. Marshall Smith was defaulted. On the request of the Eastern Rock Island Plow Company, the court made a special finding of facts and stated conclusions of law thereon, as follows:
"1. The plaintiff is, and ever since prior to October 6, 1921, has been the duly appointed executrix of the last will of William W. Stout, who died in Wabash county, Ind., September 7, 1921.
"2. The defendant Eastern Rock Island Plow Co. is, and prior to January 1, 1921, has been, a corporation organized under the laws of Indiana, with its general offices in Indianapolis, Indiana, and with L.G. Ferguson as its general manager.
"3. Heretofore, to wit: On the 6th day of October, 1920, the defendant plow company filed in the Wabash Circuit Court in which said estate was pending, its claim against the estate of William W. Stout based upon *Page 221 
a certain note signed by William W. Stout and Marshall Smith, dated Aug. 9, 1920, payable Feb. 1, 1921, for $4,561.39 with eight per cent. interest from date, a copy of which note was filed with the claim. The claim was disallowed by the executrix and was duly transferred to the issue docket.
"4. On April 18, 1921, the plow company duly filed its amended claim against the estate, making the defendant Marshall Smith a party defendant thereto, upon whom process was duly issued and served. Subsequently the executrix employed Hon. Frank O. Switzer, a practicing attorney of Wabash county, to represent her in said estate and to defend said claim. Switzer appeared in said cause for her and filed a cross-complaint alleging that William W. Stout had executed the note sued on as surety for Marshall Smith, and [praying] that judgment be so rendered and that the property of Smith be first exhausted. Upon said cross-complaint, process was duly issued and served upon Smith. Switzer also filed therein, on behalf of the plaintiff, an answer of general denial and also of payment of the note. In June, 1921, the cause duly came on for trial in the Wabash Circuit Court and was submitted to the court for trial without the intervention of a jury. Smith having been prior thereto duly defaulted, the court found for the executrix on her cross-complaint and for the plaintiff therein on its complaint, and duly rendered judgment in favor of the Eastern Rock Island Plow Company against Marshall Smith, as principal, and Emily J. Stout, executrix of the last will of William W. Stout, deceased, as surety, for the sum of $5,163.72, to be levied first from the goods and property of Marshall Smith and if not so made, then from the assets of the estate of William W. Stout, deceased, which judgment remains in full force and unappealed from. *Page 222 
"5. On October 26, 1921, and at the first term after the expiration of the April Term, 1921, of the Wabash Circuit Court, at which term said judgment had been rendered, the plaintiff herein filed her complaint asking for a new trial in said cause.
"6. The only evidence introduced on the trial of said cause was the note and proof of attorneys' fees based upon the statement of counsel for the plaintiff and the defendant estate of William W. Stout.
"7. Sometime in the Spring of 1920 — the exact date unknown, but not later than June 1, of that year — Marshall Smith procured William W. Stout to place his name at the close of the printed form of a blank promissory note, with none of the blanks filled but on which there were appropriate blank places for filling in the date, maturity, amount, place of execution, place of payment, which blank form when so signed by Stout was as follows:
No ________ P.O ________________ 19__
On or before ________________ for value received, I (or we) promise to pay Eastern Rock Island Plow Company or order ____________________ Dollars, with Indianapolis or Chicago Exchange and collection charges, and interest from maturity at eight per cent. per annum until paid. Payable at ____________ with attorneys' fees and without relief from valuation and appraisement laws of the state of Indiana.
W.W. Stout.
Due __________________
"8. At the time the signature of Stout was so procured, Smith was indebted to the Eastern Rock Island Plow Company in an open account for goods purchased in January, 1920, in the sum of $1,930. At the time the signature of Stout was so procured to said blank form, Smith stated to Stout that the note, when filled *Page 223 
out, would call for the payment of the sum of $1,930 and upon that statement, Stout signed the printed form as the surety of Smith and then authorized Smith to fill in the blank places therein so as to make it a perfect promissory note calling for the payment of said sum. Thereafter Smith held the blank form of the promissory note in the shape that it was delivered to him until the eighth day of August, 1920.
"9. On said eighth day of August, 1920, Smith was indebted to the Eastern Rock Island Plow Company on various items of indebtedness, including said bill of $1,930, in the aggregate sum of $4,561.39. On said day one L.G. Ferguson, the then general manager of the Eastern Rock Island Plow Company, in company with one Von L. Snyder, a sales agent of the Eastern Rock Island Plow Company, for and on behalf of the company called on Smith and requested him to either pay the whole of the indebtedness or execute his note therefor, with surety thereon. Whereupon Smith informed Ferguson and Snyder that he could not pay the indebtedness but would make his note for the same, and thereupon produced and delivered to Ferguson the blank form of the promissory note as it was when so signed by Stout, and instructed Ferguson to fill the blanks in the form and to insert in the appropriate blank the sum of $4,561.39.
"Ferguson took away with him the note, and later the blanks in the form were filled in by one Fred Strack at the direction of Ferguson. No change was made in the printed part of the note, except that in the interest clause the word `maturity' was stricken out by drawing lines across that word and then writing above the word so struck out the word `date.'
"The form when so filled in and the change made in the printed part, is as follows: *Page 224 
"`No. 7839. P.O. Amboy, Ind., August 9, 1920.
"`On or before February 1st, 1921, for value received, I (or we) promise to pay Eastern Rock Island Plow Company or order, four thousand five hundred sixty-one and 39/100 dollars.
"`With Indianapolis or Chicago Exchange and collection charges. And interest from date at eight per cent per annum until paid. Payable at National City Bank, Indianapolis, Ind.
"`With attorney fees and without relief from valuation and appraisement laws of the State of Indiana.
Marshall Smith W.W. Stout
"`Due February 1, 1921.'
"10. Said form when the blanks were so filled in is the identical note upon which said Eastern Rock Island Plow Company based its claim so filed against the estate of said Stout, deceased, as set out in Finding No. 3, and upon which it obtained its judgment as set out in Finding No. 4.
"11. William W. Stout was not present at the time the printed form of the promissory note was so delivered by Smith to Ferguson, and had no knowledge of the talk and transaction so occurring between Smith and Ferguson at said time. At no time thereafter was Stout informed of the delivery of the blank form, nor of the talk and transactions then occurring between Smith and Ferguson. At no time thereafter was Stout informed that the blank form of note was so filled, nor did Stout at any time thereafter ratify the same.
"12. At the time of the delivery of the printed form of the promissory note, and the occurring of the transactions between Smith and Ferguson accompanying the delivery, Stout was at his home sick with a fatal malady from which he thereafter, to wit: on September 7, 1920, departed this life, a resident of Wabash county, in the State of Indiana. Soon after the death of Stout, *Page 225 
Emily J. Stout was appointed as the executrix of his estate by the Wabash Circuit Court.
"13. Emily J. Stout was the wife of William W. Stout at the time of his death and thereafter was his widow.
"At no time had William W. Stout informed his wife, or any member of his family, of the fact that he had so signed his name to the printed form, nor did the wife or any member of his family have any knowledge of the fact.
"In October, 1920, the executrix was for the first time informed of the existence of the note, that it was held by the Eastern Rock Island Plow Company and that the company intended to hold the estate of her late husband liable for the payment thereof.
"She did not then know, nor had she any means of knowing, in what manner the note came into existence. She did not then know of any person who could give her information on the subject, but Marshall Smith. Thereafter, she interviewed Smith upon the subject and requested him to tell her all he knew about the note, and Smith failed and refused to give her any information as to when decedent's name was placed thereon, nor the condition the instrument was in at that time, nor when or how thereafter it came to be delivered and filled up. Thereafter, and while the claim was pending for allowance against the estate upon the note, Smith was on several occasions interviewed by herself and her two sons-in-law for the purpose of obtaining from him information concerning the execution and delivery of the note and what defenses were available against the claim, and on each of the occasions Smith failed and refused to give her any information. She afterwards, by and through her son-in-law, interviewed Von L. Snyder, the sales agent of the Eastern Rock Island Plow *Page 226 
Company, concerning the note, and he was requested to give such information as he had concerning the delivery of the note, at which time Snyder refused to say anything more than that he knew that decedent's name was upon the paper when delivered.
"Failing to obtain from these sources information as to any possible defenses to said note available to the estate, and not knowing of any other source from which such information could be obtained, she suffered to be taken against said estate a judgment of allowance for the amount of the note, said allowance being made and entered in the Wabash Circuit Court at the April term thereof for the year 1921.
"14. After the close of the April term, 1921, of the Wabash Circuit Court, Marshall Smith came to the executrix and informed her that said form of said note was signed by the decedent as set out in Finding No. 7, and that the form was afterwards delivered to the Eastern Rock Island Plow Company and by it filled in, as set out in Finding No. 9, and that he would swear to the same.
"After receiving the information and at the next term of the Wabash Circuit Court following said April term, the executrix filed her complaint for a new trial.
"At another trial of the cause, if a new trial is granted, Smith will appear as a witness and swear to the truth of the facts as set out in Findings No. 7 and No. 9."
Upon the foregoing facts, the court stated conclusions of law as follows:
"That the judgment of allowance so obtained by the Eastern Rock Island Plow Company against the estate of William W. Stout, deceased, be reversed, set aside, and declared void, and that the executrix of said estate be granted a new trial of the cause wherein said judgment was so obtained." *Page 227 
The motion for a new trial was overruled, and the following judgment was rendered:
"It is therefore considered and adjudged by the court that the judgment of allowance so obtained by the Eastern Rock Island Plow Company against the estate of William W. Stout, deceased, be reversed, set aside and declared void, and that the executrix of said estate be granted a new trial of the cause wherein said judgment was obtained."
The assignment of errors challenges: (1) The ruling on the demurrer; (2) each conclusion of law; and (3) the ruling on the motion for a new trial.
On the assignment that the court erred in overruling the demurrer, the appellant urges that the complaint is bad 1, 2. because no affidavit of any witness was filed therewith or made a part thereof, setting forth the newly-discovered evidence to which the witness would testify. The contention cannot be sustained. First Nat. Bank v. Mulford
(1911), 48 Ind. App. 84. All other specific objections to the complaint are involved in the assignment that the court erred in each conclusion of law; and, for that reason, they will not be considered here. Scanlin v. Stewart (1894), 138 Ind. 574;Woodward v. Mitchell (1894), 140 Ind. 406.
On the assignment that the court erred in overruling the motion for a new trial, the first contention is that the finding is not sustained by sufficient evidence, because the evidence 3. fails to show that the plaintiff exercised due diligence before the first trial to get the evidence which she has since discovered. An attentive examination of item 13 of the special finding will disclose that the court has fully and clearly stated the particular facts bearing on this point; and from those facts, the ultimate fact (or conclusion of fact) *Page 228 
that the plaintiff exercised due diligence follows inevitably.
The second contention on that assignment is that paragraph thirteen of the special finding is not supported by any evidence in two particular features: (1) That "the executrix had no 4. means of knowing in what manner the note came into existence"; and (2) that "Smith failed and refused to give her and her sons-in-law any information concerning the note and its execution." In passing upon the contention, the entire paragraph must be considered and every part thereof must be taken in the light of the context. The meaning of the paragraph is too clear to be mistaken; and, as written, the paragraph is fully sustained by the evidence. Indeed, throughout the entire special finding, the trial court has carefully and conscientiously followed the proof.
On the assignment that the court erred in each conclusion of law, it is contended that the special finding does not show "a defense to the note." It is not necessary that an 5. absolute defense be shown. With respect to that feature, it is sufficient to justify the court in granting a new trial if the newly-discovered evidence is of such a character that it will probably change the result. 2 Watson, Revision Works' Practice 571. The finding in that respect is sufficient.
We come now to the main contention in the case, viz.: that the special finding fails to show that the plaintiff exercised due diligence to discover the evidence relating to the execution of the note. The appellant has made this contention nearly the whole of its burden in the appeal, having urged it against the complaint, against the ruling on the motion for a new trial, and against the conclusion of law. The solution of the controversy depends upon the answer to each of the following questions: What amount of diligence does the law *Page 229 
require in this class of cases? To what degree of certainty must the requisite diligence be proved?
Referring to the first question: the courts often use the expression "due diligence." Due diligence means that quantum of diligence which the law requires. Statements of that kind 6. are, of course, indefinite. Because of the inherent nature of the subject, the most definite general statement that can be made is that to entitle a litigant to a new trial on the ground of newly-discovered evidence he must show that he exercised reasonable diligence. That must be the rule, for surely, the courts should not require of any litigant that which is unreasonable. And that is the rule generally recognized by the courts. 20 R.C.L. 289 et seq.; 29 Cyc 886 et seq.; 16 Am. 
Eng. Ency. of Law 564 et seq.; 14 Ency. Plead. Prac. 798.
Now, what quantum of proof does the law require of the plaintiff to make out her case? When she applied for a new trial on the ground of newly-discovered evidence, she had to face 7. the presumption that by the exercise of reasonable diligence she might have discovered the evidence before the trial. Zimmerman v. Weigel (1902), 158 Ind. 370; Kober v.Boyce (1917), 64 Ind. App. 677. Because of that presumption, and because her application involved the cancellation of a judgment, it was the duty of the trial court to proceed with caution.
Much has been written on this subject and the duty of the trial courts has been variously stated.
In Coe v. Givan (1825), 1 Blackf. 367, Judge Blackford himself, speaking for the court, said: "In listening to such applications, Courts of justice have always been extremely cautious, and have uniformly overruled them, where, upon using due diligence, the evidence might have been discovered before. 6 Bac. 672. Much is necessarily left to the discretion of the Courts below *Page 230 
in motions for new trials, and it requires a case much stronger than the present, to induce us to interfere with them in questions of this kind."
In Doubleday v. Makepeace (1835), 4 Blackf. 10, 28 Am. Dec. 33, the court said: "In the case of Bateman v. Willoe, 1 Sech. Lef. 201, Lord Redesdale observed, that a bill for a new trial was watched by equity with extreme jealousy, and it must see that injustice has been done, without the fault, negligence, or inattention, of the party seeking the relief."
In Morrison v. Carey (1891), 129 Ind. 277, the court said: "The law favors the diligent, and punishes the negligent. A party seeking a new trial on account of evidence discovered since the termination of the controversy between him and his adversary must, if he succeed, establish every element of such a case strongly, clearly, and satisfactorily. The strong presumption is that by the proper effort the party might have discovered the evidence and used it on the trial; and that his failure to do so is owing to intentional omission, or to unpardonable neglect, and to overcome this presumption a case must be made free from delinquency."
In Zimmerman v. Weigel, supra, the court said that: "Under no circumstances in such cases will the court grant a new trial unless the applicant clearly and unequivocally, both in his pleading and in his proof, shows that he exercised due diligence in his efforts to procure, at the first trial, the evidence in question." The court further said that the presumption against the applicant "can only be rebutted by a satisfactory showing to the contrary."
The following statement, taken from Baker v. Joseph (1860),16 Cal. 173, has found its way into our reports: "Applications for this cause are regarded with distrust and disfavor."Morrison v. Carey, supra. It has also been said that the applicant's excuse for not adducing *Page 231 
the evidence at the trial "must be so broad as to dissipate all surmise to the contrary." McKernan, Admr., v. Estabrook,Admr. (1917), 66 Ind. App. 212.
Manifestly, some of the statements on this point are exaggerations. The courts must not be led astray by strong words. However, when making the multifarious and varied statements on this subject, undoubtedly the courts had in mind the same purpose. They were all aiming at the same target. On calm and thoughtful consideration of the whole subject, it becomes apparent that underlying the diversified statements is the great truth that it is the duty of every court to be fair about it; for any attitude other than fairness is not judicial. Furthermore, in dealing with the statements above quoted, the courts have to encounter an inherent difficulty — the element of indefiniteness. What constitutes extreme caution? When is the proof clear, when strong, and when satisfactory? Undoubtedly, it is the duty of every court, in cases of this kind, to be on guard against fraud and imposition, and to see that the proof establishes every element necessary to entitle the plaintiff to the relief sought.Simpson v. Wilson (1855), 6 Ind. 474; Swift v. Wakeman
(1857), 9 Ind. 552. Ultimately, however, each case must stand or fall on its own facts. As said in Richter v. Meyers (1892),5 Ind. App. 33: "There are cases in which great injustice might result, however, if a party should be denied the benefit of newly-discovered evidence, but in all such cases the applicant must make out a clear case of diligence, and show particularly that he made all reasonable efforts to discover the evidence before the trial, or he will be denied relief."
The fact must not be overlooked that the plaintiff's action is essentially a suit in equity. It can be nothing else; for it involves the cancellation of a judgment. In this jurisdiction, prior to the adoption of the Code, applications *Page 232 
like the one at bar were instituted by filing a bill in chancery.Mason v. Palmerton (1850), 2 Ind. 117.
"Applications to a court of chancery for a new trial, after a trial at law, are in our time very rare. The practice, except in cases the most extraordinary, has long since gone out of use, because courts of law are now competent to grant new trials, and are in the constant exercise of that right to a most liberal extent. Anciently, courts of law did not grant new trials, and in those days courts of equity exercised that jurisdiction over trials at law, and compelled the successful party to submit to a new trial, when justice required it; but even in that age, the court of chancery proceeded with great caution." Doubleday v.Makepeace, supra.
A complaint for a new trial on the ground of newly-discovered evidence, pursuant to § 614 Burns 1926, § 589 Burns 1914, must be regarded as a substitute for a bill in chancery. (See 8-10. Moore v. Coates [1878], 35 Ohio St. 177.) The trial court must determine, in the first instance, whether the proof is clear, strong, and satisfactory; whether an injustice has been done; whether the plaintiff has exercised reasonable diligence; and whether the ends of justice require that a new trial be granted. In passing on each case, the trial court exercises a legal discretion, and on appeal, its judgment will be reversed only for the abuse of that discretion. It has been aptly said that "a court clothed with power to grant new trials, must necessarily be vested with large discretion." Moore v. Coates,supra.
In the light of the foregoing principles, we will now consider the contention that the conclusion of law is erroneous because the plaintiff has not shown that she is free from 11, 12. negligence. The contention rests on the proposition that she might have discovered *Page 233 
the evidence concerning the execution of the note in any one of the following ways: (1) By filing proper interrogatories with her pleadings (§ 383 Burns 1926, § 365 Burns 1914); (2) by taking a preliminary examination (§ 564 Burns 1926, § 533 Burns 1914); or (3) by examining Smith as a witness at the trial. Assuming, for the sake of elucidating this feature, but for no other purpose, that the procedure indicated by the contention would have been proper on the pleadings filed, yet the fact remains that there must have been something in the mind of the administratrix to suggest that procedure. What was within the scope of her mental vision to prompt her to pursue that course? What was her situation? It may be assumed that she was familiar with her deceased husband's signature and could not deny its genuineness. It may be assumed that she had reason to believe that he had no previous dealings with the plow company and that he must have signed the note as surety for Smith. It may be assumed that from Smith's statement to the effect that the note does not represent the true amount he owes the plow company, the note being for too large a sum, she acquired the impression that possibly he had made partial payments thereon. With respect to the questions of suretyship and payment, she did what might reasonably have been expected of her. As to all things else pertaining to the note, she was in utter ignorance and darkness. She appealed to Smith; but he gave her no light. She interviewed Snyder; but he refused to say more than that "he knew that the decedent's name was upon the paper when delivered." In the circumstances, could she reasonably have been expected to do more? Is it reasonable to say that she is chargeable with negligence because she did not anticipate the evidence which has since come to light? To have foreseen the existence of that evidence, she must *Page 234 
have been endowed with extraordinary mental faculties amounting to preternatural power of divination. We are of the opinion that she exercised reasonable diligence. Springfield, etc., Co. v.Michener (1899), 23 Ind. App. 130. The newly-discovered evidence will probably change the result. § 11359 Burns 1926, § 9089 et seq. Burns 1914.
Evidently the plaintiff's cause appealed to the conscience of the trial court; and there is nothing in the record to justify a reversal.
The judgment is affirmed.
McMahan, J., dissents.