SULLIVAN ET AL. *v.* STATE OF INDIANA.

[No. 26,746. Filed March 15, 1937. Rehearing denied May 17, 1937.]

*Joseph H. Conroy,* for appellant.

*Omer Stokes Jackson,* Attorney-General, and *Caleb J. Lindsey,* Assistant Attorney-General, for the State.

ROLL, J.—Appellants were charged by affidavit with the crime of robbery. They entered a plea of not guilty. The issues were tried by the court without the intervention of a jury, who found appellants guilty as charged in the affidavit and rendered judgment on said finding.

The only question presented by this appeal is the overruling of appellants' motion for a new trial as to specification 6, which relates to newly discovered evidence. The newly discovered evidence is an affidavit of one Ora A. Miller. Omitting the caption and signature it is as follows:

"Q. On or about December 14th, 1934, in Gary, Lake County, Indiana, have you committed any robbery?

A. Yes.

Q. How many robberies in this county, one, two, three or four or a half dozen?

A. I don't know.

Q. Did you rob the Utility of Crown Point, on or or about the 14th of December, 1934?

A. I did

Q. Who was with you? Was Sullivan or Frick with you?

A. No.

Q. Now on or about the 14th day of December, 1934, at Gary, Lake County, Indiana, did you rob, hold up the Peacock Cleanery, if you remember?

A. I do not know.

K. Did you rob any cleaner?

A. Yes, one in Gary.

Q. But you do remember in Crown Point you robbed the Utility, you do remember that?

A. Yes.

Q. You remember robbing a cleaner in Gary, but do not know the name?

A. Yes.

Q. Was anybody with you at the time.

A. Yes, two other fellows.

Q. Now these two robberies happened in one day, didn't they?

A. They did.

Q. You say Sullivan or Frick were not with you at that time?

A. No at no robberies.

Q. How long did you live in Gary after you left the penitentiary and when did you come there?

A. I lived there since July 1st, 1919. I came out of jail and lived there. I was out one year and six months and lived there and was sent back and was out three months something like that.

Q. Now are you telling me the truth in regard to these robberies? You are telling me the absolute truth in regard to these robberies? You are giving these statements in the presence of these gentlemen of your own free will?

A. Yes."

At the trial there were five witnesses who identified the appellants as being the persons who committed the crime. The defense of appellants was an alibi.

The evidence discloses the fact that Eugene Sullivan, Sr., father of one of the defendants, was a witness for the defense and testified that he was a police officer of the city of Gary and knew Ora Miller when he worked on the police force of the city of Gary. He gave a lengthy discription of Miller as to his height, weight, color of hair and eyes and a number of facts which showed that he was well acquainted with Miller. He obtained a picture of Miller from the identification bureau at the police station in Gary which was introduced in evidence.

Miller's affidavit showed that he had committed numerous crimes in and about the city of Gary which was also where appellants lived. At the time of making affidavit he was imprisoned in the State prison of Kentucky for life.

In order to warrant a new trial on the ground of newly discovered evidence it must appear that the evidence is such as will probably change the result if a new trial is granted; that it is material to the issue; that due diligence was exercised in obtaining the newly discovered evidence; that it is not cumulative or impeaching. Therefore it is the duty of the trial court to take into consideration the weight and importance of the new evidence in connection with the evidence introduced at the trial, even the credibility of the witnesses.

There were several affidavits in the record. The affidavit of Miller showed a discrepancy from the evidence given by the state at the trial in that all the state witnesses who identified the robbers, testified that there were only two robbers, and Miller in his affidavit confessed that he and two others who were not the appellants, committed the robbery. There was the

evidence of Eugene Sullivan, Sr., father of one of the defendants who testified at the trial at great length in giving the description of Miller, and of obtaining a picture of Miller which was introduced in evidence at the trial. There was the affidavit of Joseph Conroy which showed that the defendants knew about Miller at the time of the trial if not before. In passing on the motion for a new trial all this evidence and these affidavits were before the trial court, he heard the evidence given on the trial from the mouths of the witnesses, observed their conduct and demeanor on the witness-stand, and had better means of weighing the evidence than this court possesses and it was within his sound legal discretion to determine whether or not a new trial should be granted. As was said by the Supreme Court of Wisconsin in the case of *Ohms* v. *State* (1880), 49 Wis. 415, 422, 5 N. W. 827:

"When a motion for a new trial is made upon the minutes of the court, it is imperative that such motion should be heard by the judge who tried the cause, unless the party who makes the motion consents that it may be heard by some other judge. It would seem to be impossible for a judge to intelligently determine a motion for a new trial upon the minutes of the court unless he presided at the trial. Without being present at the trial, unless a bill of exceptions or case were first settled or agreed upon, containing a full history of all that took place, he could know nothing of the matters which he ought to know in order to give an opinion as to whether a new trial ought to be granted; and even upon a case or bill of exceptions made and settled, he would not be in a position to give a very satisfactory opinion upon the motion. In that case he would be very much in the position in which this court finds itself when called upon, under our statute relating to appeals, to review the opinion of the trial judge in granting or refusing a new trial; and this court has repeatedly held that it must be a case of very gross error which will induce this court to interfere with the discretion of the trial

judge in granting or refusing a new trial upon the evidence, or for other matters occurring during the trial. . . 'The exercise of a sound discretion in such matters often depends upon a variety of facts and circumstances which cannot be described on paper and brought before the appellate tribunal with their original force and influence, and which no one but the judge before whom the case was tried can fully and properly estimate. Many of these facts and circumstances are absolutely incapable of such delineation; and to say that the discretion depending upon them shall be transferred to another court, there to be exercised without the means of forming a correct judgment, seems impossible'."

In order for this court to reverse the judgment it must be shown that the trial court abused its judicial discretion in passing upon the motion for a new trial upon the grounds of newly discovered evidence. *Lowry* v. *Indianapolis Traction etc. Co.* (1920), 77 Ind. App. 138, 126 N. E. 223; *Eastern, etc. Plow Co.* v. *Stout, Executrix et al.* (1925), 84 Ind. App. 217, 147 N. E. 160; *Berggen* v. *Mutual Life Ins. Co.* (1918), 231 Mass. 173, 120 N. E. 402.

There is a serious question presented by the facts as to whether appellants have used due diligence in obtaining the newly discovered evidence but owing to the decision we have reached we need not discuss this question.

Under all the facts and circumstances presented, in our judgment the record fails to show such abuse of judicial discretion as to warrant a reversal.

Judgment affirmed.